IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,292

STATE OF KANSAS,
*Appellee*,

v.

CHARLES E. SHELLY,
*Appellant*.

SYLLABUS BY THE COURT

1.

Evaluation of the third exception allowing a late direct appeal under *State v. Ortiz*, 230 Kan. 733, Syl. ¶ 3, 640 P.2d 1255 (1982), requires consideration of whether the criminal defendant received effective assistance of counsel under *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

2.

A criminal defendant whose counsel erroneously advises that there is no issue worthy of direct appeal is eligible for application of the third exception under *State v. Ortiz*, 230 Kan. 733, Syl. ¶ 3, 640 P.2d 1255 (1982), if the defendant demonstrates that he or she would have taken a timely appeal but for the erroneous advice.

Review of the judgment of the Court of Appeals in 49 Kan. App. 2d 942, 318 P.3d 666 (2014). Appeal from Brown District Court; JOHN L. WEINGART, judge. Opinion filed March 25, 2016. Judgment of the Court of Appeals dismissing the appeal is reversed. Judgment of the district court is reversed. Case is remanded to the Court of Appeals.

1

*Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, argued the cause and was on the briefs for appellant.

*Kevin M. Hill*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This is a companion case to *State v. Perry*, 303 Kan. ___, ___ P.3d ___ (No. 109,506, this day decided).

Defendant Charles E. Shelly, along with his codefendant wife, Cara N. Perry, entered a no contest plea to one count of unlawful distribution of a drug precursor and one count of unlawful possession of a drug precursor. Defense counsel did not file a timely direct appeal. Shelly filed a pro se K.S.A. 60-1507 motion, arguing that he should have been sentenced under the identical offense doctrine discussed in *State v. Snellings*, 294 Kan. 149, 273 P.3d 739 (2012), a case handed down on the date of Shelly's sentencing. The district court judge held the *Snellings* decision applied only to Shelly's possession of a drug precursor conviction and reduced his sentence accordingly.

Shelly appealed, and the Court of Appeals remanded to district court for a hearing under *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982). *Ortiz* permits untimely appeals when one of three exceptions applies. 230 Kan. 733, Syl. ¶ 3 (late appeal permitted if defendant not informed of right to appeal; was not furnished attorney to perfect appeal; or was furnished attorney for appeal who failed to perfect, complete appeal). The district judge held that none of the *Ortiz* exceptions applied in Shelly's case.

The Court of Appeals affirmed the district judge's decision and dismissed Shelly's appeal. *State v. Shelly*, 49 Kan. App. 2d 942, 318 P.3d 666 (2014).

2

We granted Shelly's petition for review and now hold that the third *Ortiz* exception permitted Shelly to file an untimely direct appeal. Accordingly, we reverse the Court of Appeals' dismissal and remand this case to it for consideration of the merits of Shelly's *Snellings* argument on the distribution of a drug precursor conviction.

DETAILED FACTUAL AND PROCEDURAL BACKGROUND

On March 5, 2012, Shelly pleaded no contest to one count of unlawful distribution of a drug precursor and one count of unlawful possession of a drug precursor, both in violation of K.S.A. 2011 Supp. 21-5710 and both severity level 2 drug felonies. On April 6, 2012, he was sentenced to 56 months' imprisonment for unlawful distribution of a drug precursor concurrent to 49 months' imprisonment for unlawful possession of a drug precursor. He was also ordered to register as a drug offender.

At the conclusion of the sentencing hearing, the district judge stated:

"Mr. Shelly, you have a right to appeal the sentence I've handed down, but you must file a written notice of appeal within 14 days from today with the clerk of the district court. If you cannot afford to hire an attorney to help you with the appeal, one will be appointed for you."

Shelly would later testify that he asked defense counsel after sentencing what his appeal options were. His counsel, Robert Arnold III, said that there was nothing to appeal, and Shelly did not direct Arnold to file an appeal.

Arnold would later testify that he and Shelly had discussed an appeal and how much it would cost, that Shelly had received the benefit of a plea bargain and concurrent sentencing, and that a mutual decision was made not to proceed with an appeal. Arnold's law firm had handled a previous appeal for Shelly.

3

A timely notice of appeal was never filed.

On the day of Shelly's sentencing, this court issued its decision in *Snellings*, holding that possession of ephedrine or pseudoephedrine with intent to manufacture a controlled substance, a severity level 2 drug felony, has elements identical to those of possession of drug paraphernalia with intent to manufacture a controlled substance, a severity level 4 drug felony, which meant that Shelly's crimes of conviction could be subject to reclassification that would reduce his sentence. *Snellings*, 294 Kan. at 158.

According to Shelly's eventual testimony, he became aware of *Snellings* when he first arrived at prison in April 2012, and he asked his mother to notify Arnold of the ruling. Arnold took no action and advised Shelly to "stop being a jailhouse lawyer."

Arnold, for his part, would later testify that he had no recollection of Shelly contacting him within 14 days of sentencing and that "it wasn't really an appeal that he wanted me to try to do." Rather, "[i]t was a motion to reduce his sentence, and it was based upon some law." Arnold could not recall when he learned about the *Snellings* decision, supposing he had been told by his law partner or by Shelly. Arnold said:

> "At different points, I would receive communications for, you know, months and months later, and he had quoted some other cases . . . , because there was a change in the law in terms of what the sentencing recommendations would be for precursors. And there was never an agreement reached to file any type of additional request for relief from that sentence, one, because they didn't pay any additional funds for a private attorney to do that, and that's my recollection."

On July 2, 2012, Arnold filed a motion to withdraw as Shelly's counsel, which was granted by the district judge. On the same day, Shelly filed his pro se K.S.A. 60-1507

motion, arguing his sentence for unlawful distribution of a drug precursor should be modified to that for a severity level 4 felony based on *Snellings*. On July 11, 2012, the district judge issued an order consolidating Shelly's pro se K.S.A. 60-1507 motion in 2012 CV 23 with the criminal case in 2011 CR 165.

Shelly was represented by court-appointed counsel Andrew Delaney at the district court hearing on August 6, 2012. When asked if the State would concede that *Snellings* applied to reduce Shelly's sentence for unlawful possession of a drug precursor, the prosecutor said he would like to preserve the issue of Shelly's failure to file a timely direct appeal.

The district judge concluded that *Snellings* applied to Shelly's unlawful possession of a drug precursor conviction but not to his unlawful distribution of a drug precursor conviction. Shelly was resentenced to 11 months' imprisonment on his conviction for unlawful possession of a drug precursor, but the controlling sentence for unlawful distribution of a drug precursor was left as is. The district judge encouraged Shelly to appeal because clarification was needed on whether the distribution sentence needed to be corrected as well.

On August 17, 2012, Shelly appealed from the district judge's orders, "including but not limited to finding of guilt and the sentence entered herein and the order regarding Defendant's Motion to Correct Illegal Sentence entered on August 6, 2012." The State did not cross-appeal the district judge's modification of the possession sentence. Nancy Ogle was appointed to represent Shelly on appeal.

The journal entry for the August 6, 2012, hearing was not filed until December 20, 2012. At that point, Shelly filed an Amended Notice of Appeal clarifying that he was appealing from this journal entry and all other adverse rulings and orders.

5

On April 17, 2013, Shelly filed a motion for remand from the Court of Appeals to the district court, acknowledging that he had not filed a timely notice of appeal after his April 2012 sentencing but only from his August 2012 resentencing. Shelly asserted Arnold failed to file an appeal despite Shelly's request that he do so. The Court of Appeals retained jurisdiction but granted Shelly's motion for remand to district court for a determination of whether an untimely appeal of the sentence should be permitted. It ordered:

> "The only appealable issue in the supplemental appeal is whether the district court erred in determining that the *Ortiz* exceptions did not apply. If this court determines the district court did not err, the appeal will be dismissed for lack of jurisdiction. If this court determines the district court erred, the appeal will be retained and the parties will be ordered to submit briefs on the substantive issues."

Before the *Ortiz* hearing in district court, Shelly filed Defendant's Motion for Reconsideration of Sentence for Count I, suggesting that the clarification needed in August 2012 from the appellate courts on appropriate sentencing under *Snellings* had since been provided. The motion cited *State v. Swor*, No. 107,622, 2013 WL 781131 (Kan. App. 2013) (unpublished opinion).

On May 17, 2013, the district judge conducted a hearing on *Ortiz* and the Defendant's Motion for Reconsideration. At the outset, the district judge denied Shelly's motion because the Court of Appeals had retained jurisdiction of the case and had remanded only on the *Ortiz* issue.

As stated above, Shelly testified that he asked about his appeal options, that Arnold said there was nothing to appeal, and that Shelly did not direct Arnold to file an appeal. When Shelly learned of *Snellings* in prison, his mother emailed Arnold, but

Arnold did not pursue resentencing. Arnold testified that there was a decision not to proceed with an appeal and that, although Shelly later sent him communications about other cases, "there was never an agreement reached to file any type of additional request for relief from that sentence, one, because they didn't pay any additional funds for a private attorney."

On cross-examination, defense counsel asked Arnold if he made a habit of checking new appellate cases decided each Friday, and the State objected, stating "it appears we're getting more now into a[n] ineffective type allegation, or setting the grounds for that instead of *Ortiz*. And *Ortiz* focuses on whether he was directed to file an appeal, and I think we're kind of running astray of that." The district judge responded that he would allow counsel a little bit of latitude, "but we need to deal with the *Ortiz* matter." The defense asked one more question about how Arnold learned of the *Snellings* decision, but Arnold could not recall if he learned of the decision from Shelly or from his law partner.

In closing argument, defense counsel focused on the first *Ortiz* exception, arguing the district judge erred by not informing Shelly that he had the right to appeal the severity level of his sentence under *State v. Patton*, 287 Kan. 200, 220, 195 P.3d 753 (2008). Counsel's second argument was interrupted by the district judge:

> "THE COURT: And the second component of your argument?
>
> "MS. OGLE: Is that Mr. Shelly, you know, expressed his desire to have an appeal, and Mr. Arnold—
>
> "THE COURT: Well, we had a hearing to modify the sentence on Count II, with appointed counsel, as a result of 60-1507, right?

7

"MS. OGLE: Right. Which was consolidated with his—

"THE COURT: Which he was given the right to appeal—notice of appeal in that hearing, as well.

"MS. OGLE: Right. And he did appeal—

"THE COURT: Yeah.

"MS. OGLE: —that sentence, right.

"THE COURT: Right."

Counsel's remarks then turned to the State's repeated references to Shelly's plea agreement.

Examining the *Ortiz* factors, the district judge found Shelly was advised of his right to appeal within 14 days at sentencing; Shelly had counsel for the purpose of perfecting an appeal; and Shelly was advised that if he could not afford counsel, one would be appointed for him. The district judge found that Shelly did not direct Arnold to perfect an appeal, reasoning that merely talking about whether there was any issue to appeal or the *Snellings* case did not amount to "a direction that the case be appealed." Accordingly, the district judge ruled that none of the *Ortiz* exceptions permitting an untimely appeal existed. The Journal Entry was filed on May 28, 2013.

On June 3, 2013, Shelly attempted to appeal the district court rulings on the *Ortiz* exceptions, his Motion for Reconsideration, and all previous adverse rulings and orders. He later filed a motion to obtain a second remand to district court so that he could add a claim of ineffective assistance of counsel. The motion stated that the district judge had

8

not permitted questioning regarding ineffective assistance of counsel at the *Ortiz* hearing and that

> "[w]hile an argument can be made that a later claim of ineffective assistance of counsel will not be barred because it is not being addressed in this appeal as the issues currently stand, Appellant makes this motion in an effort to avoid the chance of a court barring the issue in a subsequent proceeding."

The Court of Appeals denied the motion and refused to consider the ineffective assistance of counsel issue on the merits because *Ortiz* relief was not warranted.

Given all of these proceedings, the sole issue Shelly briefed on appeal was his challenge to the district court *Ortiz* ruling. Specifically, Shelly argued the first *Ortiz* exception—the defendant was not informed of the right to appeal at sentencing or by counsel—was applicable because neither the district judge nor Arnold specifically advised Shelly that he had a right to appeal the severity level of his sentence under *Patton,* 287 Kan. at 220 ("[A] district judge must inform a criminal defendant at sentencing, regardless of whether the defendant has entered a plea or gone to trial, that: (1) a right to appeal the severity level of the sentence exists . . . .").

In a published opinion, the Court of Appeals panel did not interpret *Patton* to require a sentencing judge to specifically advise the defendant of his or her right to appeal the severity level of the sentence. It reasoned that the defendant in *Patton* merely happened to be challenging the severity level of his conviction and sentence, and the court thus used language applicable to the facts of the particular case before it. The panel did not believe the *Patton* court intended to broaden the applicability of the explicit language of the statutes cited in that case—K.S.A. 22-3424(f) (requiring sentencing court to advise defendant of right to appeal at sentencing even if defendant unable to pay costs)

9

or K.S.A. 22-4505 (requiring district judge to inform indigent felony defendant of right to appeal conviction, right to have attorney appointed to prosecute appeal)—by imposing a greater duty on district judges. *Shelly*, 49 Kan. App. 2d at 948. The panel further noted that a defendant has the right to appeal a criminal history classification under K.S.A. 21-4721(e)(3), and requiring a sentencing judge to advise a defendant of the right to appeal the severity level of the sentence could mislead a defendant into believing that severity level was the only issue that could be pursued before the appellate courts. Because Shelly was advised of his right to appeal his sentence within 14 days and was told that an attorney would be appointed for the appeal if he could not afford one, the panel held the first *Ortiz* exception was inapplicable. 49 Kan. App. 2d at 949.

Shelly also argued in his brief before the Court of Appeals that Ogle had raised the third *Ortiz* exception before the district court, *i.e.*, that Shelly was furnished counsel for an appeal and that the attorney "failed to perfect and complete an appeal." *Albright v. State*, 292 Kan. 193, 198, 251 P.3d 52 (2011). In Shelly's view, Arnold should have taken steps to preserve Shelly's right to appeal, including advising him that he could appeal the severity level that led to his sentence. Had Arnold filed a timely notice of appeal, Shelly believed he could have argued entitlement to relief under *Snellings* and *State v. Adams*, 294 Kan. 171, 273 P.3d 718 (2012).

The panel held that the testimony at the remand hearing provided substantial competent evidence to support the district judge's finding that Shelly did not direct Arnold to perfect an appeal of the sentencing order at the April 2012 sentencing. Rather, Shelly simply decided not to pursue a timely appeal. Accordingly, the panel affirmed the district judge's ruling that the third *Ortiz* exception was inapplicable. *Shelly*, 49 Kan. App. 2d at 950-51.

It is significant that the panel did not address Shelly's ineffective assistance of counsel claim under the umbrella of the third *Ortiz* exception, other than noting: "Shelly's motion made no claim of ineffective assistance of counsel against Arnold." 49 Kan. App. 2d at 943.

Because none of the *Ortiz* exceptions applied, the panel did not reach the merits of whether *Snellings* would apply to Shelly's conviction of unlawful distribution of a drug precursor, and it dismissed Shelly's appeal. 49 Kan. App. 2d at 942, 951.

On petition for review to this court, Shelly raised two issues: (1) whether the first *Ortiz* exception is applicable because Shelly was not informed of his right to appeal the severity level of the sentence as required by *Patton*; and (2) whether the third *Ortiz* exception is applicable because Arnold knew Shelly wanted to appeal his sentence and failed to file a timely notice of appeal, which was objectively unreasonable under *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). In a supplemental brief, Shelly also has asked this court to consider the substantive issue of whether *Snellings* and *Adams* apply to his unlawful distribution of a drug precursor conviction. In his view, although the Court of Appeals panel limited the issues he could brief on appeal, "[b]etween the briefs filed by Shelly and the briefs filed by Perry, the Court is well informed on the facts and legal authorities governing the merits of Shelly's appeal."

Shelly has also submitted two letters of supplemental authority under Supreme Court Rule 6.09(b)(1)(C) (2015 Kan. Ct. R. Annot. 53). In the first, he asks this Court to adopt the reasoning of *Grazier v. State*, No. 109,792, 2014 WL 5312851, at *4 (Kan. App. 2014) (unpublished opinion), which applied the third *Ortiz* exception and held that defense counsel was ineffective for failing to inform the defendant of the possible effect of the identical offense sentencing doctrine while *Snellings* and *Adams* were pending on

11

review. In the second, Shelly directs this court's attention to a different Court of Appeals panel's decision in his wife's case. *State v. Perry*, No. 109,506, 2014 WL 6676044 (Kan. App. 2014) (unpublished opinion). In that case, the panel concluded that Perry was entitled to a late appeal under the third *Ortiz* exception, 2014 WL 6676044, at *4, and Shelly asserts that the facts of his wife's case are materially indistinguishable from those here. As we noted above, we affirm the Court of Appeals decision in the *Perry* case today. See slip op. at 12.

## FIRST *ORTIZ* EXCEPTION

This court reviews "the factual findings underlying a trial court's *Ortiz* ruling for substantial competent evidence," but it applies "a de novo standard when reviewing the ultimate legal determination of whether those facts fit within an *Ortiz* exception." *State v. Gill*, 287 Kan. 289, 293, 196 P.3d 369 (2008). To the extent this case requires interpretation of a statute, such an issue also is governed by a de novo standard. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014).

In Kansas, a criminal defendant's direct appeal must be filed within 14 days of sentencing. See K.S.A. 2015 Supp. 22-3608(c) (14-day time limit for crimes committed on or after July 1, 1993). "The filing of a timely notice of appeal is jurisdictional. Generally, the failure to file a timely notice of appeal requires dismissal of the appeal. [Citations omitted.]" *Albright*, 292 Kan. at 197. In the interest of fundamental fairness, however, this court recognized three exceptions in *Ortiz* to the dismissal requirement. *Patton*, 287 Kan. at 206 (citing *Ortiz*, 230 Kan. at 735-36).

> "The *Ortiz* exceptions recognize that an untimely appeal may be allowed in the direct appeal from a conviction and sentence if a criminal defendant either (1) was not informed of the right to appeal at sentencing or by counsel, (2) was indigent and not

12

furnished counsel to perfect an appeal, or (3) was furnished counsel for that purpose who failed to perfect and complete an appeal. [Citations omitted.]" *Albright*, 292 Kan. at 198.

Shelly argues the first *Ortiz* exception is applicable to his case because the district judge did not specifically advise him that he had "a right to appeal the severity level of the sentence" as required in *Patton*. 287 Kan. at 220. Shelly also emphasizes that neither Arnold nor a written plea agreement filled in the blank left by the sentencing judge.

In *Patton*, the district judge told defendant Joshua Patton that he had the right to appeal any of the judge's rulings or findings, "'specifically, in regards to finding against you on the dispositional departure.'" 287 Kan. at 203. No timely appeal was filed; *State v. McAdam*, 277 Kan. 136, 145-47, 83 P.3d 161 (2004) (applying identical offense sentencing doctrine to conspiracy to manufacture methamphetamine conviction), was subsequently decided; various motions were filed; and Patton ultimately had an *Ortiz* hearing on a K.S.A. 60-1507 motion alleging counsel was ineffective for failing to file a timely appeal challenging the severity level of his attempted manufacture crime. On its way to a decision, the *Patton* court set out the backdrop and proper analysis under the first *Ortiz* exception:

> "A criminal defendant may qualify to take a late appeal under the first *Ortiz* exception if he or she has been denied basic procedural due process, *i.e.*, timely and reasonable notice and an opportunity to be heard. [Citations omitted.]

> "Three Kansas statutes provide specific procedural safeguards of the right to appeal by certain criminal defendants. First, K.S.A. 22-3210(a)(2) requires a judge who accepts a felony guilty or nolo contendere plea to inform the defendant of the 'consequences' of the plea. These consequences include waiver of the right to appeal any resulting conviction. K.S.A. 22-3424(f) instructs that a sentencing judge must inform a defendant who has gone to trial of 'defendant's right to appeal' and of the right of a person who is unable to pay the costs of an appeal to appeal *in forma pauperis*. We note that

*Phinney*, 280 Kan. at 402, and *State v. Pickerill*, No. 93,595, [2006 WL 2129122,] unpublished opinion filed July 28, 2006, *rev. denied* 282 Kan. 795 (2006), have interpreted this provision broadly to apply to all defendants. In keeping with these precedents, we hold explicitly that the requirements of K.S.A. 22-3424(f) apply regardless of whether a defendant went to trial and regardless of whether he or she is indigent. K.S.A. 22-4505 requires the district judge to inform an indigent felony defendant of the 'right to appeal . . . [a] conviction' and the right to have an attorney appointed and a transcript of the trial record produced for that purpose.

"Due process is denied—and an out-of-time appeal may be permissible under the first *Ortiz* exception—if a district judge fails to abide by one of these statutes, as they have been interpreted by our earlier case law. Thus a district judge must inform a criminal defendant at sentencing, regardless of whether the defendant has entered a plea or gone to trial, that: (1) *a right to appeal the severity level of the sentence exists*; (2) any such appeal must be taken within 10 days (see *Phinney*, 280 Kan. at 400; *Willingham*, 266 Kan. at 100-01 [citing *Mitchell*, 231 Kan. at 146 ]); and (3) if the defendant is indigent, an attorney will be appointed for the purpose of taking any desired appeal. Compare Fed. R. Crim. P. 32(j) (allocating to court responsibility to inform criminal defendant of right to appeal)." (Emphasis added.) *Patton*, 287 Kan. at 219-20.

The *Patton* court concluded that the rules set forth in the opinion shall be applied "to all cases not yet final on direct appeal and those to be appealed in the future." 287 Kan. at 225. The *Patton* court did not apply the first exception because "Patton was informed of his right to appeal his sentence, although the district judge's misstatement of Kansas law meant he may have been misled about the issues that would be appropriate for appellate consideration." 287 Kan. at 225.

Addressing Shelly's argument under the first exception, the Court of Appeals panel said:

"At first blush, Shelly's argument appears to have merit. The transcript of the sentencing hearing on April 6, 2012, reflects that the sentencing judge advised Shelly of his right to appeal as follows:

"'Mr. Shelly, you have a right to appeal the sentence I've handed down, but you must file a written notice of appeal within 14 days from today with the clerk of the district court. If you cannot afford to hire an attorney to help you with the appeal, one will be appointed for you.'

"But as Shelly points out, the sentencing judge did not expressly advise him of his right to appeal *the severity level of the sentence.* The language used by the court in *Patton* would seem to make this a requirement at sentencing. 287 Kan. at 220.

"In reaching its decision in *Patton,* the Kansas Supreme Court cited three Kansas statutes that provide specific procedural safeguards of the right to appeal by criminal defendants, including K.S.A. 22-3424(f), which states:

"'After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of the defendant's right to appeal and of the right of a person who is unable to pay the costs of an appeal to appeal in *forma pauperis.*'

"K.S.A. 22-3424(f) requires a sentencing court to advise the defendant of his or her 'right to appeal' at sentencing even if the defendant is unable to pay the costs. Similarly, K.S.A. 22-4505 requires the district judge to inform an indigent felony defendant of the 'right to appeal the conviction' and the right to have an attorney appointed to prosecute the appeal. Here, the transcript of Shelly's sentencing hearing on April 6, 2012, shows that the sentencing judge satisfied these statutory requirements.

"Despite the language used by the Supreme Court in *Patton,* we do not interpret the court's decision in that case as requiring a sentencing judge to specifically advise the defendant of his or her right to appeal *the severity level of the sentence.* The defendant in *Patton* happened to be challenging the severity level of his conviction and sentence.

15

Thus, in ruling that a sentencing judge must advise the defendant of the right to appeal the severity level of the sentence, the Supreme Court was only using language applicable to the facts of that particular case.

"We do not believe that the court's holding in *Patton* intended to broaden the language of K.S.A. 22-3424(f) or the language of K.S.A. 22-4505 by imposing a duty on a sentencing judge that is not expressly contained within the statutory language. These statutes only require a sentencing judge to advise the defendant of his or her 'right to appeal' the district court's judgment and the right to have appointed counsel if the defendant cannot afford to hire an attorney. There is no statutory requirement for a sentencing judge to specifically advise the defendant of his or her right to appeal the severity level of the sentence. The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010).

"To further illustrate this point, we note that a defendant who has been sentenced under the Kansas Sentencing Guidelines has an express statutory right to appeal his or her criminal history classification as well as the severity level of the crime of conviction. See K.S.A. 21-4721(e)(3). It would make no sense to require a sentencing judge to advise the defendant of his or her right to appeal the severity level of the sentence without also requiring the sentencing judge to advise the defendant of his or her right to appeal the criminal history classification. In fact, requiring a sentencing judge to advise the defendant of his or her right to appeal the severity level of the sentence could mislead the defendant into believing that a challenge to the severity level is the only issue that can be raised on appeal.

"We conclude that the Supreme Court in *Patton* never intended to broaden the plain language of the controlling statutes by requiring a sentencing judge to specifically advise the defendant of his or her right to appeal the severity level of the sentence. This is in keeping with other Supreme Court decisions addressing the sentencing court's obligation to inform the defendant of his or her right to appeal. See *State v. Phinney*, 280

16

Kan. 394, 402, 122 P.3d 356 (2005) (trial court is required to advise the defendant of his

or her right to appeal and of the right of an indigent to appeal *in forma pauperis*); *State v.*

*Willingham*, 266 Kan. 98, 100, 967 P.2d 1079 (1998) (defendant must be advised either

by the court or by defense counsel of his or her right to appeal)." 49 Kan. App. 2d at 947-

49.

Shelly disagrees with the panel's interpretation of *Patton*. He contends the statement in *Patton* regarding a district judge's obligation to inform defendants that they have the right to an appeal of the severity level of their sentence is clear and unambiguous. He reasons the panel failed to take into consideration that his challenge to the severity level of his conviction and sentence is "no different than the defendant in *Patton*." In response, the State simply quotes the panel's analysis of this issue.

We agree with the sound reasoning of the panel in this case. None of the "procedural safeguards of the right to appeal" statutes relied on in *Patton* specifically provide that a defendant must be advised of the right to appeal the *severity level* of his or her sentence, and the language of our *Patton* decision must be understood in the context in which it arose. See 287 Kan. at 219-20; see also K.S.A. 22-3210(a)(2) (judge must inform defendant of consequences of plea, including waiver of right to appeal resulting conviction); K.S.A. 22-3424(f) (sentencing court must advise defendant of "right to appeal" even if defendant unable to pay costs); K.S.A. 22-4505 (judge must inform indigent defendant of "right to appeal the conviction" and to have attorney appointed to prosecute appeal). The *Patton* court stated that "[d]ue process is denied—and an out-of-time appeal may be permissible under the first *Ortiz* exception—if a district judge fails to abide by one of these statutes, as they have been interpreted by our earlier case law." 287 Kan. at 220. Shelly cites no earlier caselaw interpreting these statutes to require a defendant to be informed of the particular right to appeal the severity level of a sentence.

In addition, we agree with the Court of Appeals panel regarding the likelihood of confusion if a sentencing judge is required to inform a defendant of a right to appeal one component of the sentencing calculus without informing the defendant of a right to appeal another component. As the panel observed, K.S.A. 21-4721(e)(3) permits a criminal defendant to argue on appeal that "the sentencing court erred in . . . determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes." The interpretation of *Patton* suggested by Shelly leaves that information out of the information a defendant must receive.

While Shelly is correct that both his case and *Patton* involve an appeal related to the severity level of the crimes, two further points about the *Patton* decision are important to note.

First, the *Patton* decision was addressing whether Patton could appeal his sentence despite a written plea agreement waiving his right to appeal. This backdrop explains why the court was focused on the right to appeal the severity level of the sentence as opposed to appealing the crimes of conviction following a plea agreement. See *State v. Harp*, 283 Kan. 740, 743, 156 P.3d 1268 (2007) ("Generally, no appeal can be taken from a judgment of conviction upon a guilty or no contest plea.").

Second, despite the *Patton* opinion's language stating that a defendant must be informed that "a right to appeal the severity level of the sentence exists," the opinion does not say that Patton himself was specifically advised of his right to appeal the severity level of his sentence. 287 Kan. at 220. Nevertheless, the court held the first *Ortiz* exception was inapplicable; the judge had merely informed Patton of "the right to appeal any of the judge's rulings or findings." 287 Kan. at 203.

Thus application of *Patton*'s analytical framework to the facts of *Patton* itself supports the panel's conclusions that: (1) this court did not intend to add a requirement to the statutory sentencing advisories, demanding that criminal defendants be told that they have the specific right to appeal the severity level assigned to their crimes to calculate their sentences; and (2) the district judge's statement to Shelly that he had the right to appeal his sentence was sufficient to make the first *Ortiz* exception inapplicable. See *Shelly*, 49 Kan. App. 2d at 948-49.

We affirm the panel's conclusion that the district judge did not err in ruling that the first *Ortiz* exception was inapplicable.

THIRD *ORTIZ* EXCEPTION

The standards of review governing the third *Ortiz* exception are the same as those governing the first. See *Gill*, 287 Kan. at 293.

The third *Ortiz* exception allows a late appeal if a defendant was furnished or retained counsel who failed to perform. See *Patton*, 287 Kan. at 223. The standard of performance to be applied to measure the adequacy of appellate counsel under the third exception is that outlined in *Flores-Ortega*, 528 U.S. at 476-78, and a brief review of that case provides the foundation for our analysis here.

In *Flores-Ortega*, defense counsel wrote ""bring appeal papers"" in her file, but the court was unable to determine the content of her conversation with the defendant from the record. 528 U.S. at 487. To evaluate defense counsel's effectiveness concerning the filing of an appeal, the Court first held that "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his

19

instructions, his counsel performed deficiently." 528 U.S. at 477. Next, the court discussed an attorney's duty to consult about an appeal:

"In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. *We employ the term 'consult' to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes*. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. See *supra*, at 477. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

. . . .

"We . . . hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (*for example, because there are nonfrivolous grounds for appeal*), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, *courts must take into account all the information counsel knew or should have known*. See *id*., at 690 (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a

20

given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." (Emphases added.) 528 U.S. at 478-80.

To show prejudice in such circumstances, the court held, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." 528 U.S. at 484. The court continued:

"[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination. We recognize that the prejudice inquiry we have described is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place; specifically, both may be satisfied if the defendant shows nonfrivolous grounds for appeal. See *Hill* [*v. Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)] (when, in connection with a guilty plea, counsel gives deficient advice regarding a potentially valid affirmative defense, the prejudice inquiry depends largely on whether that affirmative defense might have succeeded, leading a rational defendant to insist on going to trial). But, while the performance and prejudice prongs may overlap, they are not in all cases coextensive. To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." 528 U.S. at 485-86.

In *Patton*, we applied the *Flores-Ortega* rule to the third *Ortiz* exception as follows:

"[*Flores-Ortega*] distinguishes between situations in which counsel's performance in the course of a proceeding is alleged to be deficient and those cases in which counsel's performance or failure to perform leads to forfeiture of a proceeding. *Strickland v.*

21

*Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), governs the former and *Flores-Ortega* the latter. See *Flores-Ortega*, 528 U.S. at 476-86.

"We have long employed *Strickland* to judge whether a criminal defendant received ineffective assistance of counsel under the Sixth Amendment in the course of a criminal proceeding in the district court. See *Chamberlain v. State*, 236 Kan. 650, 656, 694 P.2d 468 (1985) (adopting and applying *Strickland* two-part standard). Under that standard, before counsel's assistance is determined to be so defective as to require reversal of a conviction, the defendant must establish two things: first, that counsel's performance was deficient, and second, that counsel's deficient performance prejudiced the defense. See *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007). Likewise, we use an adapted version of the *Strickland* standard to judge whether a criminal defendant received ineffective assistance of counsel during the course of a direct appeal. See *Kargus v. State*, 284 Kan. 908, 919, 169 P.3d 307 (2007).

"The situation contemplated by the third *Ortiz* exception is different, involving as it does the complete destruction of the right to pursue a direct appeal through counsel's failure to file a timely notice or otherwise protect his or her client's right. As recognized in *Flores-Ortega*, where appointed counsel said he or she would file a notice of appeal on behalf of the defendant but failed to do so, no 'presumption of reliability' can be afforded a 'proceeding . . . that never took place.' Thus, the two-part *Strickland* deficiency-plus-prejudice analysis must bend.

"Under *Flores-Ortega*, if appointed or retained counsel has failed to file or perfect a direct appeal by a criminal defendant, we will presume the existence of prejudice. This is not, however, the same as a finding of prejudice per se, requiring application of the third *Ortiz* exception. The defendant must still demonstrate that, but for counsel's failure, he or she would have taken a timely direct appeal. The defendant need not show, as he or she would have had to show if we were using the *Strickland* standard as our benchmark, that such a timely direct appeal would have been successful. Compare *Peguero*, 526 U.S. at 30-31 (O'Connor, J., concurring)." *Patton*, 287 Kan. at 224-25.

22

In this case, neither the district judge presiding over the *Ortiz* hearing nor the Court of Appeals panel examined whether Shelly received ineffective assistance of counsel on the way to concluding that the third *Ortiz* exception was inapplicable. Specifically, the panel said:

> "The testimony at the remand hearing provides substantial competent evidence to support the district court's finding that Shelly did not direct Arnold to perfect an appeal of the sentencing order on April 6, 2012. Thus, it cannot be said that Shelly was furnished counsel for the purpose of an appeal who failed to perfect and complete the appeal. Rather, the evidence supports the district court's finding that Shelly simply decided not to pursue a timely appeal. Accordingly, the district court did not err in finding that the third *Ortiz* exception did not apply to the circumstances of Shelly's case." 49 Kan. App. 2d at 950-51.

In contrast, in the *Perry* case, the panel applied *Patton* when reviewing whether the third *Ortiz* exception applied, and it reached the opposite conclusion:

> "It is undisputed that Arnold and Perry discussed appellate options both before and after sentencing and that Perry did not request or direct Arnold to file an appeal. However, it is likewise undisputed that Arnold was unaware of our Supreme Court's decision in *Snellings* during the time period when Perry could have timely filed her appeal and, further, that had Perry been made aware of *Snellings*, she would have appealed.

> "Arnold incorrectly told Perry that there existed no legal grounds for an appeal. Had she been properly advised, Perry would have pursued the issue on direct appeal. Counsel's failure to learn of *Snellings* and advise his client accordingly was objectively unreasonable and deprived Perry of her right to file a direct appeal. Accordingly, there is substantial evidence to support Perry's claim under the third *Ortiz* exception that the failure of her counsel to correctly inform her of the state of the law amounts to a failure of counsel to file or perfect an appeal.

23

"Because Perry has met the narrow and exceptional circumstances required to claim an *Ortiz* exception, we treat Perry's filing as a timely direct appeal of her sentence, permitting us to reach the merits of her claim. See *State v. Phinney*, 280 Kan. 394, 406, 122 P.3d 356 (2005)." State v. *Perry*, No. 109,506, 2014 WL 6676044, at *3-4 (Kan. App. 2014) (unpublished opinion).

Shelly, not surprisingly, believes he and his wife should be similarly treated. He urges us to follow the panel opinion in *Perry* and another panel's recent decision in *Grazier v. State*, No. 109,792, 2014 WL 5312851, at *3-4 (Kan. App. 2014) (unpublished opinion).

Defendant Joseph Grazier pleaded no contest to unlawful possession of certain drug precursors or drug paraphernalia, and the sentence for the crime was based on classification as a severity level 2 felony. Although *Snellings* and *Adams* were pending on petition for review, Grazier decided not to appeal because defense counsel advised him there were no appealable issues. Grazier subsequently filed a K.S.A. 60-1507 motion, seeking application of *Snellings* and *Adams.* The district court denied the motion, reasoning that Grazier did not assert ineffective assistance of counsel and that there was no reason to apply the decisions in *Snellings* and *Adams* retroactively.

Grazier appealed, and the Court of Appeals remanded for an *Ortiz* hearing in district court. At that hearing, defense counsel admitted to ignorance of *Snellings* and *Adams* at the time he advised Grazier that there were no issues worthy of appeal. The district judge ruled that the attorney's representation was reasonable and that the third *Ortiz* exception was inapplicable.

24

On appeal, the Court of Appeals panel reversed, saying:

"What strikes us about this case is that had Grazier filed an appeal, it would have been pending when the *Snellings* and *Adams* Supreme Court opinions were filed. Undoubtedly, he would have received relief on his sentence. . . .

"Actually, this is a question of fundamental fairness. The Supreme Court has stated:

"'The . . . principle underlying all three exceptions recognized in *Ortiz* and its progeny is based on the facts that the defendant's failure to timely appeal was the result of being deprived of a right to which he or she was entitled by law: the statutory right to be advised of the right to appeal; the statutory right to be provided an attorney to file an appeal; or the right to have *the appointed attorney perform effectively* in perfecting the appeal.' (Emphasis added.) *Guillory v. State*, 285 Kan. 223, 228, 170 P.3d 403 (2007).

"We emphasize that the decision to appeal is left to the client and not the attorney. But to make an informed decision, the client must be informed correctly by [his or her] counsel. The appointed attorney here looked at case citations listed beneath the statutes and pronounced that there were no appealable issues. We find that meager effort to be substandard.

"All legal advice must be considered within its context. In *Laymon v. State*, 280 Kan. 430, Syl. ¶ 3, 122 P.3d 326 (2005), the Supreme Court opined that a lawyer's failure to foresee a change in the law may lead to K.S.A. 60-1507 relief if the failure was not objectively reasonable. We cannot see that counsel could have been unaware of the identical offense sentencing doctrine since it presented so many questions in the law of drug crimes in Kansas ever since the ruling in *McAdam* was handed down in 2004. Any attorney dealing with drug crimes and their sentences had to deal with the question of the applicability of the identical offense sentencing doctrine. We find it unreasonable that counsel did not at least tell Grazier of the doctrine. Had he done so and had Grazier

refrained from pursuing an appeal, at least Grazier's choice would have been an informed one.

"In *State v. Patton*, 287 Kan. 200, 195 P.3d 753 (2008), while looking at the third exception under *Ortiz*, the court adopted the standard of performance for an attorney as stated in *Roe v. Flores-Ortega*, 528 U.S. 470, [476-78], 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). . . .

"We hold that Grazier's attorney was ineffective for failing to inform Grazier of the identical offense sentencing doctrine when discussing an appeal. The *Snellings* and *Adams* petitions for review had been granted and were available 10 months before Grazier was sentenced. *McAdam* was issued by the Supreme Court 7 years before Grazier was sentenced. While the listing of cases beneath each criminal statute in the supplements is helpful, they are truly limited. Published but annually, they cannot be considered comprehensive." 2014 WL 5312851 at *3-4.

To the *Grazier* panel, prejudice from counsel's deficient performance was self-evident, because Grazier should have been sentenced as a drug severity level 4 felon rather than as a drug severity level 2 felon. The panel thus vacated his sentence and remanded for resentencing. 2014 WL 5312851, at *4.

No petition for review was filed in *Grazier.* See also *Brown v. State*, No. 110,887, 2015 WL 1636714, at *1, 6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 302 Kan. __ (2015) (counsel ineffective for failing to discuss identical offense sentencing doctrine of *Snellings* with client to enable informed decision on whether to appeal). But see *State v. Brown,* No. 110,693, 2014 WL 5801178, at *3-4 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. __ (2015) (third *Ortiz* exception inapplicable even though counsel did not advise Brown about possibility of appealing offense severity level).

26

The key difference in the *Shelly* and *Perry* panel decisions is application of a *Flores-Ortega* ineffective assistance of counsel analysis. Where it happened, the defendant was entitled to take a late appeal; where it did not happen, the defendant's attempt to take a late appeal was stymied.

We note that, in each case, the district judge who presided over the *Ortiz* hearing limited counsel's ability to question prior defense counsel about his unawareness of the *Snellings* decision. The district judge—and, eventually, the *Shelly* panel—obviously viewed the issue of ineffective assistance of counsel as completely separate from the issue of applicability of the third *Ortiz* exception. This view of the law was apparently encouraged by the State, who argued in response to the petition for review in this case that Shelly was attempting inappropriately to raise ineffective assistance for the first time by "couching" it in terms of a third *Ortiz* exception issue.

This view of the law is erroneous. *Patton* makes clear that counsel's effectiveness is part and parcel of the third *Ortiz* exception. See *State v. Patton*, 287 Kan. 200, 218-19, 195 P.3d 753 (2008) ("The second and third exceptions—applicable when a defendant was not furnished an attorney to perfect an appeal or was furnished an attorney for that purpose who failed to perfect and complete an appeal—*go to the right of counsel and effectiveness of counsel.*"). (Emphasis added.)

Having established the link between ineffective assistance of counsel as determined under *Flores-Ortega* and the third *Ortiz* exception, we turn to the parties' arguments on whether Shelly has met the standard necessary to take a late appeal.

The State would distinguish this case from *Patton* because Shelly did not expressly direct Arnold to file a direct appeal; rather, the record supports a mere inquiry about an appeal. Shelly counters this State argument by asserting that the onus of

27

knowing the law cannot be placed on a defendant. He argues that it should be enough that he was interested in taking an appeal, that he communicated his interest to Arnold, and that he relied on Arnold's expertise and advice when he dropped the idea of taking an appeal. This inaction on his part does not represent an informed decision, because he had not received reliable, accurate advice from his attorney. In its absence, he asserts, he should not be penalized; failure to direct an attorney to file a timely appeal should be excused when the attorney has incorrectly advised a defendant that there is "nothing to appeal."

A review of how the federal circuit courts of appeal have treated facts similar to those before us provides persuasive guidance.

In *United States v. Kelley*, 318 Fed. Appx. 682, 684 (10th Cir. 2009) (unpublished opinion), defense counsel told defendant Kenneth Kelley that entry of a plea and pronouncement of a sentence within guidelines would mean "there would be nothing left to appeal" and that only 2 percent of appeals are successful. After sentencing, Kelley asked defense counsel if he was going to take care of everything and defense counsel responded "yes." Kelley and defense counsel later expressed differing views on whether that exchange referenced a planned appeal.

Because Kelley neither gave counsel explicit instructions to appeal nor ordered him not to appeal, the Tenth Circuit applied *Flores-Ortega* to determine if defense counsel "consulted" as necessary with Kelley about an appeal:

> "We do not believe that [counsel] Baker's statement that there would be nothing to appeal meets the Supreme Court's definition of 'consult.' As noted above, the Court requires counsel to advise 'the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes.' *Flores-Ortega*, 528 U.S. at 478. Arguably, Mr. Baker's statement informed Mr. Kelley of

the disadvantages of taking an appeal—that he would probably lose. However, simply stating that a plea agreement would leave 'nothing to appeal' does not inform a defendant of any advantages of taking an appeal, nor does it make an effort to determine the defendant's wishes regarding an appeal, as the Supreme Court requires. In addition, such a statement is potentially misleading to a defendant who has not waived his appellate rights. For those reasons, we disagree with the district court's conclusion that Mr. Baker consulted with Mr. [Kelley] about an appeal." 318 Fed. Appx. at 686.

Next, the Tenth Circuit considered whether there was reason to believe either that a rational defendant would desire an appeal or that Kelley demonstrated to counsel that he was interested in appealing. 318 Fed. Appx. at 686-87 (citing *Flores-Ortega*, 528 U.S. at 480). The court thought it unlikely a rational defendant would want to appeal under the circumstances, but it nevertheless was reasonable to believe Kelley was interested in appealing because of his exchange with counsel at sentencing. "Mr. Kelley's question was not a direct request for an appeal[;] it was a reasonable demonstration of his desire that Mr. Baker take care of his legal matters, and the only remaining legal matter was a possible appeal." 318 Fed. Appx. at 687. This exchange, coupled with Kelley's later testimony about his desire to file an appeal, satisfied the prejudice element under *Flores-Ortega*; Kelley demonstrated a reasonable probability that, but for counsel's failure to consult with him about an appeal, he would have appealed. 318 Fed. Appx. at 688.

In *Thompson v. United States*, 504 F.3d 1203 (11th Cir. 2007), petitioner-appellant Richard Thompson and defense counsel had a 5-minute conversation after sentencing. The conversation established that Thompson was unhappy with his sentence, when it was compared to those given his codefendants. He asked counsel why the judge told him he could appeal when he had pleaded guilty, and counsel told him that he had a right to appeal but that it would not be worthwhile or successful. Thompson responded by saying, "'[F]ine.'" 504 F.3d at 1207.

When Thompson's case reached the Eleventh Circuit, the panel pointed out that counsel had not explained the advantages or disadvantages of taking an appeal, "nor that he was obligated to file an appeal if that [was] what Thompson wanted, regardless of his recommendation," before concluding the consultation was inadequate under *Flores-Ortega*:

"The content of the exchange in this case did not constitute adequate consultation. Simply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense. No information was provided to Thompson from which he could have intelligently and knowingly either asserted or waived his right to an appeal. This record is clear that no reasonable effort was made to discover Thompson's informed wishes regarding an appeal. Under these circumstances, any waiver by Thompson of his right to appeal was not knowing and voluntary." 504 F.3d at 1207.

The Eleventh Circuit next held that a rational defendant would have wanted to appeal the disparate sentence and Thompson expressed a desire to appeal. Thompson also established the requisite prejudice because "[*h*]*ad Counsel adequately consulted with him about an appeal*, there is a reasonable probability that Thompson would have exercised his right to appeal." (Emphasis added.) 504 F.3d at 1208.

In a later Eleventh Circuit case, *Speight v. United States*, 427 Fed. Appx. 731 (11th Cir. 2011) (unpublished opinion), petitioner-appellant Mackese Speight argued her defense counsel had been ineffective when she told Speight she had nothing to appeal after her guilty plea and sentencing. The Eleventh Circuit first held that counsel had a duty to consult under *Flores-Ortega* because Speight had not waived her appellate rights and had nonfrivolous issues to appeal. The court held that counsel's statement that Speight had nothing to appeal was inadequate consultation under *Thompson* and that

30

Speight was prejudiced because a reasonable probability existed that, but for counsel's deficiency, Speight would have taken a timely appeal. 427 Fed. Appx. at 733-34.

In *United States v. Malone*, 442 Fed. Appx. 864 (4th Cir. 2011) (unpublished opinion), defendant-appellant Lonnie Malone expressed interest in appealing at his sentencing. In a subsequent meeting with Malone's son and in a letter, defense counsel said that he would not file a notice of appeal and that Malone probably would receive a longer sentence if he appealed.

The Fourth Circuit held that the consultation was inadequate under *Flores-Ortega* because the advice was incorrect. Malone was not adequately advised of all of the circumstances surrounding a potential appeal; defense counsel stated he would not file an appeal on Malone's behalf; and defense counsel failed to follow up with Malone on whether he had received counsel's letter or had made a decision. The Fourth Circuit also concluded that Malone had made a sufficient showing that he would have appealed if defense counsel had properly consulted with him. 442 Fed. Appx. at 867-68.

Holdings and analyses in other federal cases are in harmony with the reading and application of *Flores-Ortega* we have observed in *Kelley*, *Thompson*, *Speight*, and *Malone*. See *United States v. Espinoza-Aguilar*, 469 Fed. Appx. 663, 670 (10th Cir. 2012) (unpublished opinion) ("Appellate counsel may be ineffective if he or she 'unreasonably overlook[s] meritorious grounds for appeal.' [*United States v.*] *Lopez*, 100 F.3d [113,] 119 [10 Cir. 1996]."); see also *Ortega v. Gonzalez*, 591 Fed. Appx. 528, 530 (9th Cir. 2014) (unpublished opinion) (failure to advise of right to seek writ of mandate in California courts on nonfrivolous claim constitutes ineffective assistance under *Flores-Ortega*); *Stanton v. United States*, 397 Fed. Appx. 548, 549-50 (11th Cir. 2010) (unpublished opinion) (applying *Thompson*; consultation inadequate when client requested appeal after sentencing, merely nodded his head when counsel said no

appealable issues available); *Cameron v. United States*, No. 1:04-CR-42, 2012 WL 1150490, at *10 (E.D. Tenn. Apr. 5, 2012) (unpublished opinion) (no late appeal permitted when client fails to establish desire to appeal, nonfrivolous grounds for appeal).

Applying the pattern of these federal cases here, we must begin with the fact that Shelly expressed a desire to appeal. He dropped the effort only when Arnold told him there was nothing to appeal. This is similar to what occurred in *Kelley*, *Thompson*, *Speight*, and *Malone*, and it is different from directing defense counsel not to appeal. It places this case squarely within the *Flores-Ortega* analysis we adopted in *Patton*.

The next inquiry is whether defense counsel adequately consulted with Shelly. *Roe v. Flores-Ortega*, 528 U.S. 470, 478, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). While defense counsel clearly articulated the disadvantages of taking an appeal, he did not advise Shelly of the advantages, *i.e.*, preserving an argument in favor of application of the identical offense sentencing doctrine. The minimal advice given—that there was nothing to appeal—unreasonably overlooked at least potentially meritorious grounds for appeal and did not allow Shelly to knowingly and intelligently waive his right to appeal. The consultation was thus inadequate.

Because a rational defendant in Shelly's place would want to appeal on the *Snellings* identical offense issue, a duty to consult existed. *Flores-Ortega*, 528 U.S. at 480. Moreover, Shelly expressed a contemporaneous interest in appealing and implied in his later testimony that he would have appealed if he had been advised about *Snellings*. This substantial competent evidence satisfies *Flores-Ortega*'s requirement of both a duty to consult and prejudice. *Flores-Ortega*, 528 U.S. at 485-86. Under *Patton*, Shelly need not further demonstrate that he would have succeeded on the merits to invoke the third *Ortiz* exception. *Patton*, 287 Kan. at 225. It is enough that counsel's objectively unreasonable performance prevented Shelly from filing a timely appeal.

IDENTICAL OFFENSE SENTENCING DOCTRINE

Shelly has argued that, like his codefendant wife, Perry, he is entitled to application of the identical offense doctrine to his sentence for unlawful distribution of a drug precursor. See *Perry*, 2014 WL 6676044, at *5. The doctrine requires that "where two offenses have identical elements, an offender can be sentenced to only the less severe penalty applying to the two offenses." *State v. Snellings*, 294 Kan. 149, 150, 273 P.3d 739 (2012).

Shelly's petition for review listed only one issue, and it did not focus on the merits of this issue. The petition was limited to the question of whether Shelly was entitled to take a late direct appeal. Any encouragement to reach the merits contained in his supplemental brief does not expand the issues before us. We have decided the issue raised by the petition in his favor, allowing him to rely upon the third *Ortiz* exception to take a late appeal. Having disposed of that issue, we remand to the Court of Appeals for consideration of the merits of the identical offense sentencing doctrine arguments of the parties. The Court of Appeals indicated that it would permit briefing on the merits if Shelly overcame the late appeal issue, and we assume it will do so on remand.

CONCLUSION

We reverse the Court of Appeals' dismissal of Shelly's appeal. The third *Ortiz* exception allowing a late appeal applies. We remand this case to the Court of Appeals for consideration of whether Shelly is entitled to application of the identical offense doctrine to reduce his sentence for unlawful distribution of a drug precursor.

33

STEGALL, J., not participating.

W. LEE FOWLER, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Fowler was appointed to hear case No. 109,292 vice Justice Stegall under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.