NOT DESIGNATED FOR PUBLICATION

No. 119,579

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JUSTIN ROBERT SNYDER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wabaunsee District Court; GARY L. NAFZIGER, judge. Opinion filed August 16, 2019. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: Justin Robert Snyder appeals the denial of his motion to reinstate his notice of appeal, arguing the district court erred in finding the first and third exceptions under *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982), did not apply.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Snyder with one count each of aggravated assault, aggravated endangering of a child, assault, battery, abuse of a child, criminal threat, and two counts of aggravated battery. The district court initially appointed Russ Roe to represent Snyder.

1

Later, Snyder retained Troy V. Huser as his defense counsel. On December 1, 2015, Snyder entered and the district court accepted his pleas of no contest to one count of abuse of a child and one count of criminal threat. In exchange for his pleas, the State agreed to dismiss the remaining charges and to file no additional charges. The district court found Snyder guilty and dismissed the remaining charges.

Before sentencing, Nicholas J. Heiman entered his appearance as defense counsel. Through counsel, Snyder filed a presentencing motion to withdraw his pleas in February 2016. After the March 21, 2016 hearing, the district court denied Snyder's motion and proceeded to sentencing. The district court sentenced Snyder to a controlling prison term of 32 months with 24 months' postrelease supervision. The district court assessed no Board of Indigents' Defense Services attorney fees on finding Snyder was not in the position to pay attorney fees. Before adjourning, the district court advised Snyder:

"You have the right to appeal the sentence, judgment, and order of this Court. If you wish to do so, you need to notify your attorney within 15 days. You may also have a right, depending on the law that exists at the time, to come back and ask to have these convictions annulled, depending on the law then and what your situation is then."

On March 23, 2016, Snyder's counsel filed a timely notice of appeal. That same day, counsel filed motions for transcripts and an appeal bond. On April 1, 2016, his counsel filed motions to withdraw the notice of appeal and the motion for appeal bond.

On March 16, 2017, Snyder filed a pro se K.S.A. 60-1507 motion. Relevant to the present issues on appeal, Snyder's motion stated, after sentencing, he informed Heiman he wanted to appeal and Heiman told Snyder he would file an appeal. Snyder argued Heiman misled him into voluntarily dismissing the notice of appeal by telling Snyder he had no meritorious issues to appeal and an appeal would be frivolous and a waste of

money. The district court appointed Joseph A. Desch as counsel. With counsel, Snyder filed a motion to reinstate his direct appeal under *Ortiz*.

At the hearing to reinstate the appeal on October 16, 2017, Heiman and Snyder each testified to the events that led up to Snyder's withdrawal of his notice of appeal. Heiman testified Snyder had retained him to work on his motion to withdraw his pleas. Heiman filed a notice of appeal after Snyder indicated to him at sentencing he wanted to appeal. Heiman discussed the appeals process with Snyder, reviewed the pros and cons of a successful motion to withdraw a plea, and the possible outcomes of an appeal. Although Heiman could not remember the conversations from a year ago verbatim, he stated that he typically counsels his clients by reviewing the pros and cons but leaves the ultimate decision to the client.

Heiman stated he never threatened Snyder that his continuing representation was contingent on Snyder paying more money. While Heiman could not recall discussing money for the appeal with Snyder, he testified Snyder had been up front with him that he only had so much money, and he took the case with that understanding. Heiman testified he contemplated continuing work on the case after filing the notice of appeal because he was the trial counsel of record and had appellate experience, including familiarity with docketing appeals, writing briefs, and arguing before appellate courts. Heiman confirmed he saw no issue with moving forward on the appeal, and he had several phone calls with Snyder regarding the appeal.

After filing the notice of appeal, Heiman testified that he received an email from Snyder's girlfriend. In relevant part, the email read:

> "I talked to Justin on the phone last night and he is needing to talk to you about the appeal. The other night he stated that he would rather just leave the appeal on the plea agreement alone and serve his two years and be done with it. Then last night he stated

3

that he didn't know if that was the right thing to do. I think he could really use a phone call from you so that you can both discuss the pros and cons about the situation without me being the middle man. He did say that he wasn't sure if you thought he could appeal the sentencing where they sent him to prison versus giving him the opportunity to be on probation and get the treatment that was directed by Pawnee Mental health."

Heiman testified he found the email inconsistent with their prior conversations. At the time, Heiman could not contact Snyder so he waited for Snyder to call him on the phone. Heiman testified he could not recall the conversation with Snyder verbatim but stated he would have discussed the repercussions of a successful motion to withdraw plea, that he believed Snyder had a meritorious claim regarding the adequacy of his plea advisories, and that Snyder may have a less successful appeal of his sentence. Heiman stated he would have ultimately advised Snyder the decision of whether to pursue an appeal was purely his own.

Heiman testified he withdrew the notice of appeal based on Snyder's affirmative request. On cross-examination, Heiman stated he could not recall whether Snyder specifically stated "'I don't want to appeal'" but he stated he would not withdraw a notice of appeal unless a client tells him that that is their choice. Heiman also could not believe he would tell Snyder no meritorious issues existed to appeal because he still believed Snyder had appealable issues, such as the adequacy of his plea advisories. Heiman also denied telling Snyder he did not want to represent him on appeal or saying an appeal was a waste of money. Heiman also continued working on Snyder's case after withdrawing the notice of appeal, including working on property dispositions and a nunc pro tunc motion filed in January 2017.

In contrast, Snyder testified he had never seen the email his girldfriend sent to Heiman and stated he never told her to do anything for him. Snyder testified he called Heiman on April 1, 2016, or about a week after his sentencing. According to Snyder, Heiman informed him there was nothing to appeal, an appeal would cost more money,

4

and it would be a waste of money to file a frivolous appeal. Snyder stated he had only a single, two-minute phone conversation with Heiman. Snyder admitted he did not discuss the cost of the appeal with Heiman. But Snyder stated he withdrew the notice of appeal because he could not afford an attorney and Heiman knew he had no money. Snyder testified that he had an understanding with Heiman that if the motion to withdraw plea was successful and the case went to trial, he would need to pay Heiman an additional $2,500.

Snyder testified that had he known he had the right to an appellate lawyer free of cost, he would have filed an appeal. Snyder stated Heiman did not advise him of his right to a free appeal and that Heiman stated he was not an appellate attorney and he would not represent Snyder on appeal. Snyder admitted that Heiman filed motions in the district court after withdrawing the notice of appeal. Snyder also admitted he had appointed counsel at the start of the case and Heiman was his second retained counsel. But Snyder stated he had no funding from his family and he could not afford to hire a third attorney for an appeal.

The district judge denied Snyder's motion, finding the evidence and testimony did not show Snyder was denied his right to appeal under *Ortiz*.

> "He filed an appeal. He had private counsel. And when—at his own request, private counsel dismissed the appeal, and after the expiration of that, the State relied on the fact that there's been an appeal filed and the appeal had been dismissed, evidence was apparently removed or destroyed.
>
> "It's significant to note that the defendant originally, with the advice and assistance of retained counsel, entered a plea, then sought to have the plea vacated, then filed an appeal, then dismissed it, and is here now asking to have it reinstated.
>
> "I do not find from the evidence and testimony presented that the defendant was denied the right of appeal. He exercised it. For that reason, the defense motion to reinstate his appeal is denied. . . .

5

"I'm not convinced that *Ortiz*, under the facts of this case, demands that an appeal be allowed to be initiated some two years after the original appeal was dismissed by the [appellant].

. . . .

"Well, I understand both sides' arguments, but under the facts of this case, I think he was prosecuted. He received a plea bargain. He accepted the plea bargain. He wanted to vacate the plea, then he was sentenced, then he wanted to have an appeal, then he abandoned or dismissed the appeal, and now he's here today, years later, wanting to reinstate the appeal, and I do not see here, under the facts of the case, on the part of the Court and the way counsel handled the representation as far as the appeal is concerned. For that reason, motion is denied."

The district court certified its decision as a final judgment and found there was no just reason for delay under K.S.A. 2018 Supp. 60-254(b).

Snyder timely appeals. The analysis includes additional facts as needed.

ANALYSIS

Snyder argues the district court erred in denying his motion to reinstate his notice of appeal under *Ortiz* because (1) he was not fully informed of his rights to appeal and (2) his attorney provided ineffective assistance of counsel by inadequately consulting with and advising him before he withdrew his notice of appeal.

DID THE DISTRICT COURT ERR IN DENYING SNYDER'S MOTION TO REINSTATE HIS DIRECT CRIMINAL APPEAL UNDER *ORTIZ*?

*Standard of Review*

An appellate court reviews a district court's ruling on whether an *Ortiz* exception applies under a dual standard, reviewing the factual findings for substantial competent evidence and the legal conclusions de novo. *State v. Smith*, 303 Kan. 673, 677, 366 P.3d

6

226 (2016). "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.' This court normally gives great deference to the factual findings of a district court [and will] not reweigh evidence, assess the credibility of witnesses, or resolve conflicts in evidence. [Citations omitted.]" *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

*The* Ortiz *Exceptions*

A criminal defendant must file a notice of appeal within 14 days of sentencing. See K.S.A. 2018 Supp. 22-3608(c); *State v. Shelly*, 303 Kan. 1027, 1036, 371 P.3d 820 (2016). "'The filing of a timely notice of appeal is jurisdictional. Generally, the failure to file a timely notice of appeal requires dismissal of the appeal. [Citations omitted.]'" 303 Kan. at 1036. But the three *Ortiz* exceptions may apply in the interest of fundamental fairness to allow an untimely appeal:

> "'The *Ortiz* exceptions recognize that an untimely appeal may be allowed in the direct appeal from a conviction and sentence if a criminal defendant either (1) was not informed of the right to appeal at sentencing or by counsel, (2) was indigent and not furnished counsel to perfect an appeal, or (3) was furnished counsel for that purpose who failed to perfect and complete an appeal. [Citations omitted.]'" 303 Kan. at 1036.

Snyder argues the first and third *Ortiz* exceptions should allow him to reinstate his notice of appeal.

*Does the first* Ortiz *exception apply?*

Snyder does not contest whether he knew of his right to an appeal. Rather, Snyder argues the district court did not inform him of his right to have counsel appointed for his appeal, if he could not afford an attorney.

7

Under the first *Ortiz* exception: "A defendant may now qualify to take an untimely appeal when the defendant was not informed of his or her appeal rights if denied basic procedural due process." *Smith*, 303 Kan. at 678. In *State v. Patton*, 287 Kan. 200, 219-20, 195 P.3d 753 (2008), our Supreme Court held a court must inform a defendant of the procedural safeguards of his or her right to appeal as provided in three Kansas statutes: K.S.A. 22-3210(a)(2), K.S.A. 22-3424(f), and K.S.A. 22-4505. As a result, district courts must inform criminal defendants: "(1) that a right to appeal the severity level of the sentence exists; (2) the time limit for taking an appeal; and (3) that, if the defendant is indigent, an attorney will be appointed for the purpose of taking any desired appeal." *Smith*, 303 Kan. at 678 (citing *Patton*, 287 Kan. at 220).

"Claims arising under the first *Ortiz* exception are tried using a three-part burden-shifting framework. First, the defendant must demonstrate from the sentencing hearing transcript that the sentencing judge failed to communicate one or more of the three required pieces of information. If that is shown, the State bears the burden in the second part of proving the defendant nevertheless possessed actual knowledge of all the required information by some means other than the district judge's statements at sentencing. Finally, if the State cannot demonstrate this, the burden shifts back to the defendant to prove that had he or she been properly informed, a timely appeal would have been pursued." *Smith*, 303 Kan. at 678.

*First* Ortiz *Exception*

After sentencing, the district court advised Snyder:

"You have the right to appeal the sentence, judgment, and order of this Court. If you wish to do so, you need to notify your attorney within 15 days. You may also have a right, depending on the law that exists at the time, to come back and ask to have these convictions annulled, depending on the law then and what your situation is then."

8

From the transcript, Snyder met his burden. The sentencing court provided no information to Snyder of his right to appeal *in forma pauperis* under K.S.A. 22-3424(f) or his right to appointed counsel for appeal, if indigent, under K.S.A. 22-4505. See *Patton*, 287 Kan. at 219. The State concedes Snyder met his burden. While neither party relies on this deficiency, the district court also inadequately informed Snyder of the time for filing a criminal appeal under K.S.A. 2018 Supp. 22-3608(c)—14 days from sentencing. Thus, Snyder met his burden to show the district court did not fully advise him of his rights on appeal.

The State may obviate the failure to fully advise Snyder of his right to appeal by demonstrating Snyder had actual knowledge of his appeal rights outside of the district judge's oral statements at sentencing. "The source of such actual knowledge may be counsel's advice, the wording of an agreement signed by the defendant, or some other person or document; but the State bears the evidentiary burden on this point." *Patton*, 287 Kan. at 221-22.

The State recognizes Heiman testified he did not advise Snyder of his right to an appointed attorney for appeal, thus, Snyder did not receive actual knowledge of this right from his counsel. The State argues instead Snyder had actual knowledge of his right to appointed counsel, if indigent, because (1) Snyder filed an application for appointed counsel in the district court and he had an appointed trial attorney earlier in the case; and (2) in his pro se K.S.A. 60-1507 motion, Snyder stated he asked Heiman to file a request for counsel with the appellate defender's office.

The State points to Snyder's "Application for Appointed Defense Services," completed during the pretrial proceedings to show his awareness that he could have requested appointed counsel. However, the application Snyder completed provides no notice of Snyder's right to an appointed attorney for appeal or to proceed *in forma pauperis* on appeal. The State also argues Snyder had actual knowledge of his appeal

9

rights because in his pro se K.S.A. 60-1507 motion Snyder stated that he asked Heiman to file a "request [for] counsel from the appellate defender's office on 3/23/16." Arguably, the pro se K.S.A. 60-1507 motion may provide some support Snyder had knowledge of his appeal rights but his pro se motion was filed in March 2017, almost one year after he asked Heiman to withdraw his notice of appeal. The State has not met its burden to show Snyder had actual knowledge of his rights on appeal.

Ultimately to succeed under the first exception to *Ortiz,* Snyder must show, had he been properly informed, he would have sought a timely appeal. See *Patton*, 287 Kan. at 222. On appeal, Snyder argues he met his burden because he unequivocally testified he would have pursued an appeal and would have not dismissed the notice of appeal had he known his appeal rights and because Heiman could not recall why Snyder requested to withdraw his appeal.

Here, the central issue concerns whether Snyder can show he would not have withdrawn the timely notice of appeal had he known of his right to appointed counsel, if indigent. The district court here did not expressly find Snyder did not meet his burden to show he would have timely appealed, if he had known his appellate rights. Snyder challenges the district court's implied finding he failed to carry his burden, arguing he unequivocally testified he would not have withdrawn his appeal had he known of his right to have counsel appointed, if indigent. In reviewing the record, Snyder also presented evidence to support he was indigent and the potential cost of the appeal played a role in his decision not to appeal.

Heiman testified that he discussed with Snyder the pros and cons of pursuing a motion to withdraw his plea, that he felt Snyder had a meritorious issue on appeal regarding the plea advisory, and the possible outcome of an appeal of his sentence. In all events, Heiman testified that he left the decision to appeal solely up to Snyder. Heiman testified that when he undertook representation of Snyder prior to sentencing, Snyder had

10

been upfront and told Heiman he had little money. Heiman elected to take the case with that understanding. Heiman further testified that he did not recall discussing money for the appeal with Snyder and stated he never told Snyder that his continued representation was contingent on Snyder paying him more money. Heiman testified he saw no issue with moving forward on the appeal.

Snyder admitted he did not discuss the cost of an appeal with Heiman but he claims that the potential cost of an appeal affected his decision to withdraw the notice of appeal. Snyder testified that Heiman told him an appeal would be a waste of money which Heiman denies. Snyder claims that his decision not to pursue an appeal was purely financial and that he would have pursued the appeal had he known of the availability to have counsel appointed.

Heiman had taken the necessary steps to perfect an appeal on Snyder's behalf. The appeal could have moved forward but for Snyder's direction to Heiman not to pursue the appeal. In fact, Heiman continued to act on Snyder's behalf without apparent cost to Snyder after the appeal was withdrawn.

Clearly there was conflicting evidence. In denying Snyder's motion, the district court resolved the conflicting evidence in Heiman's favor and found Snyder's testimony less credible. An appellate court does not reweigh evidence, assess the credibility of witnesses, or resolve conflicts in evidence. *Talkington*, 301 Kan. at 461. Regardless of not being fully advised as to his appeal rights, Snyder was not denied the right to appeal. His appeal was proceeding. The trial court determined that there was nothing to keep the appeal from proceeding forward other than Snyder's decision to withdraw the appeal.

*Third* Ortiz *Exception*

Snyder argues that the third *Ortiz* exception applies because Heiman provided ineffective assistance of counsel in failing to adequately consult with him about his ability to pay for an appeal and not advising Snyder of his right to appointed counsel, if indigent, before Snyder withdrew his notice of appeal.

The third *Ortiz* exception applies where counsel was appointed or retained for an appeal but counsel failed to perform and, by failing to file a timely notice of appeal or otherwise protect the defendant's rights, destroyed the defendant's right to pursue a direct appeal. See *Patton*, 287 Kan. at 224. "[C]ounsel's effectiveness is part and parcel of the third *Ortiz* exception." *Shelly*, 303 Kan. at 1047. When analyzing prejudice, our Supreme Court has adopted the United States Supreme Court's standard of counsel's performance in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000):

> "[I]f appointed or retained counsel has failed to file or perfect a direct appeal by a criminal defendant, the court presumes the existence of prejudice. The defendant must still demonstrate that, but for counsel's failure, he or she would have taken a timely direct appeal. The defendant need not show that such a timely direct appeal would have been successful." *Patton*, 287 Kan. 200, Syl. ¶ 11.

See *Flores-Ortega*, 528 U.S. at 484. Under the third *Ortiz* exception, "the defendant must establish that: (1) he or she told counsel to appeal, but the attorney failed to file or perfect the appeal; and, (2) he or she would have timely appealed, but for counsel's failure." *State v. Smith*, 304 Kan. 916, Syl. ¶ 4, 377 P.3d 414 (2016).

In this case, Snyder directed Heiman to file a notice of appeal in the courtroom at sentencing. Heiman filed a timely notice of appeal. After filing the notice of appeal, Snyder directed Heiman to withdraw the notice of appeal. Heiman spoke with Snyder before withdrawing the notice of appeal and testified he would have withdrawn it only

12

upon Snyder's affirmative request. Heiman followed Snyder's directions to file the notice of appeal and to withdraw the notice of appeal. Thus, Snyder cannot now complain Heiman performed deficiently in following his directions to file and then to withdraw the timely notice of appeal. See *Flores-Ortega*, 528 U.S. at 477.

Snyder argues Heiman performed deficiently in failing to consult with him regarding his ability to pay for the appeal and failing to inform him of his right to appointed counsel if he could not afford it based on the Kansas Supreme Court's decision in *Shelly*. In *Shelly*, Shelly expressed a desire to appeal but his counsel told him there was nothing to appeal. 303 Kan. at 1051. Our Supreme Court held Shelly met his burden to show his counsel had a duty to consult and had shown prejudice:

> "While defense counsel clearly articulated the disadvantages of taking an appeal, he did not advise Shelly of the advantages, *i.e.*, preserving an argument in favor of application of the identical offense sentencing doctrine. The minimal advice given—that there was nothing to appeal—unreasonably overlooked at least potentially meritorious grounds for appeal and did not allow Shelly to knowingly and intelligently waive his right to appeal. The consultation was thus inadequate.
>
>  "Because a rational defendant in Shelly's place would want to appeal on the [*State v.*] *Snellings*[, 294 Kan. 149, 273 P.3d 739 (2012)] identical offense issue, a duty to consult existed. *Flores-Ortega*, 528 U.S. at 480. Moreover, Shelly expressed a contemporaneous interest in appealing and implied in his later testimony that he would have appealed if he had been advised about *Snellings*. This substantial competent evidence satisfies *Flores-Ortega's* requirement of both a duty to consult and prejudice. *Flores-Ortega*, 528 U.S. at 485-86. Under *Patton*, Shelly need not further demonstrate that he would have succeeded on the merits to invoke the third *Ortiz* exception. *Patton*, 287 Kan. at 225. It is enough that counsel's objectively unreasonable performance prevented Shelly from filing a timely appeal." *Shelly*, 303 Kan. at 1051.

The *Shelly* decision is distinguishable from this case. As stated above, Heiman filed a notice of appeal upon Snyder's specific directions at sentencing. Heiman testified

he spoke with Snyder and he withdrew the timely notice of appeal upon Snyder's affirmative request. Though Heiman could not recall his conversations with Snyder verbatim, Heiman testified that he would have discussed with Snyder the pros and cons of an appeal. Heiman testified he would have discussed with Snyder the repercussions of a successful motion to withdraw his plea, he believed Snyder had a meritorious claim regarding the adequacy of his plea advisories, and Snyder may have less success in an appeal of his sentence. Heiman stated that he ultimately would have left the decision of whether to pursue an appeal to Snyder. Contrary to Snyder's claims below, Heiman also testified he did not believe he told Snyder no meritorious issues existed for appeal because he still believed there were appealable issues. And Heiman denied telling Snyder an appeal was a waste of money. From its ruling, the district court believed Heiman over Snyder, and this court does not judge the credibility of witnesses on appeal. See *Talkington*, 301 Kan. at 461. Thus, the issue of Heiman's allegedly deficient performance here differs from *Shelly*.

Snyder provides no additional authority or argument to support his claim that the third *Ortiz* exception applies where counsel fails to advise a defendant of his or her rights to appeal when discussing whether to withdraw a timely notice of appeal.

> "A failure to support an argument with pertinent authority or to show why the argument is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. Therefore, an argument that is not supported with pertinent authority is deemed waived and abandoned." *State v. Tague*, 296 Kan. 993, Syl. ¶ 3, 298 P.3d 273 (2013).

Thus, Snyder waived or abandoned his claims on appeal.

Moreover, the *Flores-Ortega* decision discusses the duty to consult with a defendant on whether to appeal differently than how Snyder would require this court to interpret it. Unlike the circumstances in this case, the *Flores-Ortega* court imposes a duty

to consult on appellate counsel in situations where the defendant provides no specific directions on whether to appeal. See 528 U.S. at 477-78. Where a duty to consult arises, the United States Supreme Court has stated: "We employ the term 'consult' to convey a specific meaning—advising the defendant the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." 528 U.S. at 478. The constitutionally imposed duty applies "when there is reason to think either (1) that a rational defendant would want to appeal [for example, because there are nonfrivolous grounds for appeal], or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480.

Assuming Heiman had a duty to consult with Snyder, Snyder has not shown Heiman did not meet his duty based on Heiman's testimony. Heiman followed Snyder's specific directions on whether to pursue an appeal, and Heiman discussed the pros and cons of the appeal with Snyder. While Heiman did not advise Snyder of his right to appointed counsel, if indigent, Heiman likely made a reasonable effort to discover Snyder's wishes under the reasoning in *Flores-Ortega*.

That said, the *Flores-Ortega* Court advises courts to "take into account all the information counsel knew or should have known" when analyzing whether counsel met his or her duty to consult. 528 U.S. at 480. Here, Heiman admitted at the hearing that he took on Snyder's case with the understanding Snyder had little money. Nevertheless, the facts show Heiman did not perform deficiently in failing to discover that Snyder desired to withdraw the notice of appeal because of his inability to afford an appeal. Heiman could not recall whether money was discussed in regards to the appeal, and Snyder admitted he did not discuss the cost of an appeal with Heiman. Heiman was Snyder's retained counsel. Heiman had already filed a timely notice of appeal when Snyder contacted him about withdrawing the notice of appeal. Heiman discussed with Snyder the pros and cons of filing an appeal before following Snyder's instruction to withdraw the

15

notice of appeal. Under the circumstances, Heiman met his duty to consult with Snyder on whether he desired to pursue an appeal.

Under the circumstances of this case, the district court did not err in finding the third *Ortiz* exception did not apply. Heiman followed Snyder's specific directions to file a notice of appeal, and only after discussing the pros and cons of an appeal with Snyder, withdrew Snyder's notice of appeal upon Snyder's specific instruction. Accordingly, the third *Ortiz* exception does not apply.

Affirmed.