IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,761

STATE OF KANSAS,
*Appellee*,

v.

CASINROYIAL DONJE CASZARONE COLLINS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Kansas appellate courts have jurisdiction only as provided by law, and an untimely notice of appeal usually leads to dismissal of an action. But in *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982), we recognized three exceptions to this rule:  where a defendant (1) was not informed of the rights to appeal, or (2) was not furnished an attorney to perfect an appeal, or (3) was furnished an attorney for that purpose who failed to perfect and complete an appeal.

2.

The first *Ortiz* exception is based on procedural due process concerns, whereas the second and third exceptions are based on the right of counsel and effectiveness of counsel.

3.

The first *Ortiz* exception involves a three-step burden shifting analysis to determine whether a defendant received the process they were due. First, the defendant bears the burden of showing the district court failed to inform them of their right to appeal, the timeline to file an appeal, and the right to appointed appellate counsel if the

1

defendant is indigent. Second, if the defendant shows they did not receive all three pieces of information from the court, the burden shifts to the State to show the defendant had actual knowledge of all that information. Third, if the State fails to make this showing, then the burden shifts back to the defendant to demonstrate they would have taken a timely appeal had they been properly informed.

4.

A defendant satisfies their evidentiary burden in the first phase of the first *Ortiz* exception by showing an absence of the appellate right advisories in the relevant transcript.

5.

Trial counsel's failure to meet the requirements of K.A.R. 105-3-9(a)(3) is insufficient, without more, to support a finding of deficient performance under the third *Ortiz* exception.

6.

The defendant bears the burden of showing their counsel's deficient performance under the third *Ortiz* exception.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 7, 2024. Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Oral argument held December 10, 2024. Opinion filed February 28, 2025. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and reversed in part, and the case is remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Chelsea Anderson*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: Casinroyial Donje Caszarone Collins appealed the district court's decision holding that his out-of-time appeal from a probation revocation was not excused by an exception found in *State v. Ortiz*, 230 Kan. 773, 736, 640 P.2d 1255 (1982). A panel of the Court of Appeals affirmed the district court. On petition for review, we affirm in part, reverse in part, and remand to the district court for a proper advisement of Collins' appellate rights and for findings of fact, based on the evidence in the original *Ortiz* hearing, regarding whether Collins would have appealed had he been fully aware of his appellate rights.

FACTS AND PROCEDURAL BACKGROUND

On July 15, 2022, Collins pled guilty to aggravated robbery, kidnapping, and aggravated battery. At sentencing, the district court granted a downward dispositional departure to probation, placing Collins on probation for 36 months with a controlling 161-month sentence.

Around a month after sentencing, Collins' probation officer filed a warrant alleging that Collins had violated his probation by committing several new crimes, among other violations. At the probation violation hearing on October 17, 2022, Collins admitted to the eight alleged violations and waived an evidentiary hearing. The district court revoked Collins' probation and imposed his 161-month underlying sentence. See K.S.A. 22-3716(c)(7)(B) (district court may revoke probation and impose underlying sentence without prior sanction when the original sentence was granted because of a

3

dispositional departure). The district court said nothing of Collins' right to appeal, of his right to have counsel appointed for his appeal, or of the time limit for his appeal.

Collins' counsel filed a notice of appeal on November 3, 2022, three days past the statutory deadline. See K.S.A. 22-3608(c) (14 days to file notice of appeal after judgment of district court). The Court of Appeals issued a show cause order directing Collins to explain why the appeal should not be dismissed for lack of jurisdiction. In response, Collins argued his failure to appeal within the statutory deadline should be excused based on an exception outlined in *State v. Ortiz*. There, we clarified out-of-time appeals are excused "only in those cases where a defendant either was not informed of his or her rights to appeal or was not furnished an attorney to exercise those rights or was furnished an attorney for that purpose who failed to perfect and complete an appeal." 230 Kan. at 736. The Court of Appeals then remanded Collins' case to the district court to determine whether an *Ortiz* exception applied.

Collins moved to reinstate his appeal, arguing both the first and third *Ortiz* exceptions excused his untimely appeal. Collins argued the district court's failure to advise him of his appellate rights satisfied the first exception, and the third exception was met because his attorney's failure to obtain a "written waiver of [appeal]" created "an ambiguity in the appeal" that prevented "either the complete pursuit of the appeal or a knowingly-executed waiver of the right."

At the *Ortiz* hearing before the district court, both Collins and his previous attorney, Garrett Heath, testified. According to Heath, at the end of the probation revocation hearing he "briefly" told Collins that he had the right to appeal and told him to reach out if he was interested in speaking more. Heath estimated they spoke less than 90 seconds after the hearing. Collins called Heath later that day and told Heath he wished to discuss his right to appeal.

4

A little over a week later, on October 26, Heath visited Collins in jail. Heath then:

> "walked him through his rights to appeal. I had told him that I do believe, based off of my understanding of case law and precedent, that Judge Brown had the authority to do what he did, but that he still was afforded the right to appeal and that there are appellate attorneys that are more versed in appellate law and that if he wanted to file the appeal, I would file the appeal, it would then be out of my hands and he can talk to an appellate attorney about it."

According to Heath, Collins said, in response, "something to the effect of no, I just wanna get my time started." Heath reminded him that the statutory deadline to appeal was approaching, so Collins needed to alert Heath soon if he changed his mind and chose to appeal. Heath did not obtain a written waiver of appeal at this meeting. Heath testified that he next heard from Collins on November 3, three days after the deadline to file a notice of appeal. During that interaction, Collins expressed his desire to take an appeal, and Heath filed the untimely notice of appeal the same day.

According to Collins, Heath told him on October 17—the day of the probation revocation hearing—that he would come visit later to discuss the appeal. Collins also claimed that he decided to appeal on October 17 or the next day but was unable to speak to Heath. He remembered meeting Heath in jail, though he did not know what day the meeting happened, and he did not remember what they discussed at the meeting. At one point, Collins testified that he did not remember telling Heath he wanted to appeal, but at other points Collins testified he said he wanted to appeal at that time. Collins also testified that he mentioned to Heath he wanted to start his sentence so he could "hurry up and get more time done, too." He called Heath again, on November 3, and told him he wanted to appeal "[b]ecause nobody ever came back to talk to me" and he had "been callin' and callin' since after that court date on October 17th." Collins claimed he left messages with Heath's secretary, but nobody followed up on them.

5

As to the first *Ortiz* exception, the court acknowledged its failure to inform Collins of his appellate rights at the October 17 probation revocation hearing. But the court found:

"[W]e have Mr. Heath testifying, the attorney, that he informed Mr. Collins immediately after the hearing that he could appeal and that he could help him with the appeal and that he should let him know if he wants to appeal.

"Mr. Heath indicated that when he got back to his office there was a phone message that Mr. Collins wanted to file an appeal and so he went over to talk with him. And at that meeting he discussed the appeal, the 14-day time limit, and his different options. So I do find that the first element, the defendant was informed of his right to appeal, was informed of the 14-day time limit and beyond that, the attorney discussed that with him in depth.

. . . .

"Third, the defendant was furnished an attorney—the third element of Ortiz, the defendant was furnished an attorney, who failed to perfect the appeal. And I do not find this, either. That Mr. Heath, when he knew that Mr. Collins wanted to file an appeal, did so immediately, but that that, when he was informed that he wanted to appeal, was three days after the expiration.

"In fact, he had told him, Mr. Collins had told Mr. Heath that he didn't want to appeal at the earlier meeting that had occurred within the 14-day time to file an appeal.

"One thing I do note about the evidence is Mr. Heath's testimony is detailed and has a lot of recollection. And I'm certainly not faulting in any way Mr. Collins, I mean, he's not an attorney and a lot going on and facing going to prison, but he does not remember, in particular, the meeting at the jail, what was discussed in large portion. Everything in the record confirms and is in agreement with the testimony of Mr. Heath.

6

"It would make no sense that he was told to file an appeal, didn't, but then when he gets this phone call after the period of time, he immediately files it. Again, no delay there. I would note under the statute, under case law, there is no requirement for a waiver of appeal or a written waiver of appeal. The standard is being informed of it."

On appeal, Collins argued that there was no evidence that his attorney advised him of his right to appointed appellate counsel. He also claimed that his attorney performed deficiently in two ways: by failing to explain that he did not have to choose "between starting his sentence and [pursuing] an appeal" and by failing to secure a written appeal waiver as required by K.A.R. 105-3-9(a)(3). *State v. Collins*, No. 125,761, 2024 WL 2872044, at *2 (Kan. App. 2024).

The panel held that Collins' claim under the first *Ortiz* exception was "entirely new on appeal" and thus unpreserved. *Collins*, 2024 WL 2872044, at *3-5. It also held that he failed to show the third *Ortiz* exception applied and failed to preserve his claim that his attorney gave him incomplete legal advice. 2024 WL 2872044, at *6-7.

We granted Collins' petition for review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

DISCUSSION

Collins argues the district court and panel erred in finding the first and third *Ortiz* exceptions did not permit him to seek an untimely appeal.

7

*First* Ortiz *exception—alleging defendant insufficiently advised of his rights*

*Standard of review*

Appellate courts apply a bifurcated standard of review when considering a district court's ruling on an *Ortiz* exception. The district court's findings of fact are given deference so long as they are supported by substantial competent evidence. But we have unlimited review of the district court's legal conclusions in determining whether those facts fit the exception. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

"Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. In evaluating the sufficiency of the evidence, an appellate court does not weigh witness credibility. [Citation omitted.]" *Smith*, 312 Kan. at 887.

*Legal framework*

"Kansas appellate courts have jurisdiction only as provided by law, see K.S.A. 22-3608, and an untimely notice of appeal usually leads to dismissal of an action." *State v. Patton*, 287 Kan. 200, 206, 195 P.3d 753 (2008). But in *Ortiz* we recognized three exceptions to this rule: "[(1)] where a defendant either was not informed of the rights to appeal or [(2)] was not furnished an attorney to perfect an appeal or [(3)] was furnished an attorney for that purpose who failed to perfect and complete an appeal." *Ortiz*, 230 Kan. 733, Syl. ¶ 3 (holding modified by *Patton*, 287 Kan. 200).

In *Patton*, we explained the first *Ortiz* exception is based on procedural due process, while the other two exceptions are based on a defendant's right of counsel and effectiveness of counsel. *Patton*, 287 Kan. at 218-19. The first exception involves a three-

step, burden shifting analysis to determine whether a defendant received the process they were due. First,

> "a district judge must inform a criminal defendant at sentencing, regardless of whether the defendant has entered a plea or gone to trial, that: (1) a right to appeal the severity level of the sentence exists; (2) any such appeal must be taken within [14] days; and (3) if the defendant is indigent, an attorney will be appointed for the purpose of taking any desired appeal." *Patton*, 287 Kan. at 220.

Using the sentencing hearing transcript, the defendant has the burden of demonstrating the district court failed to communicate any of these three pieces of information. *Patton*, 287 Kan. at 221-22.

Second, once the defendant makes this showing, "the State still may prevent a late appeal by proving that the defendant possessed actual knowledge of all of the required information by some means other than the district judge's oral statements at sentencing." *Patton*, 287 Kan. at 221. The State may carry its evidentiary burden by presenting "counsel's advice, the wording of an agreement signed by the defendant, or some other person or document." 287 Kan. at 221-22.

Third, if the State fails to carry its burden, the burden again shifts to the defendant to prove that, had they "been properly informed, a timely appeal would have been sought." *Patton*, 287 Kan. at 222.

Here, a review of the record demonstrates that both the district court and panel misapplied the *Patton* framework when evaluating Collins' claim under the first *Ortiz* exception.

9

*District court and panel errors*

During the *Ortiz* hearing, the district court acknowledged it erred by failing to advise Collins of his appellate rights at the probation revocation proceeding. As *Patton* notes, the following three advisements are necessary:  "(1) a right to appeal the severity level of the sentence exists; (2) any such appeal must be taken within [14] days; and (3) if the defendant is indigent, an attorney will be appointed for the purpose of taking any desired appeal." *Patton*, 287 Kan. at 220; see K.S.A. 22-3608(c) (14 days to appeal, rather than 10). The probation revocation hearing transcript satisfies Collins' burden of showing the district court failed to advise him of the rights outlined in *Patton*.

The burden next shifted to the State to establish that Collins had actual knowledge of all three pieces of information. This is where the district court made its second and third errors. At the *Ortiz* hearing, the court found that even though it failed to properly advise Collins of his appellate rights, Collins had actual knowledge of his appellate rights. But under *Patton*, the State bore the burden in this step of proving Collins knew he could appeal, the timeline to appeal, and of his right to be appointed an attorney for appeal if he could not afford to pay for one. The record contains no evidence—and the district court made no findings—that Collins was aware that he could receive appointed appellate counsel. The court *only* found that Collins knew he could appeal and knew how much time he had to appeal. So the district court erroneously ignored a critical and necessary component of Collins' actual knowledge. And the court further erred by failing to place the burden of proving actual knowledge on the State, which provided no evidence that Collins had actual knowledge of his right to appointed appellate counsel if he was indigent.

Collins raised this argument below, but the panel sua sponte deemed it to be "entirely new on appeal" and chastised him for not presenting this "specific argument . . . to the district court to preserve it for appellate review." *Collins*, 2024 WL 2872044, at *3

10

(citing *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 [2022]). It then criticized Collins' failure to "challenge the sufficiency of Heath's advisement of his appeal rights or even address the State's argument that he had actual knowledge of those rights before the district court." 2024 WL 2872044, at *4. Thus, because "Collins did not give the district court an opportunity to address this issue below" and "we [do not] have a sufficient evidentiary record on which we can decide the issue on appeal," the panel deemed the issue unpreserved. 2024 WL 2872044, at *4. The panel then rejected the application of any exceptions to the normal preservation rules. 2024 WL 2872044, at *4-5.

The panel's analysis missed the mark. As *Patton* made clear, Collins had no responsibility to carry *the State's burden* of proving actual knowledge. Further, the panel's treatment of issue preservation cuts matters too finely. Collins' claim placed the first *Ortiz* exception before the district court. The district court heard testimony and made findings on the evidence, including Collins' actual knowledge. Not only did Collins' attorney cite *Patton* in his Motion to Reinstate Appeal and list the three required pieces of information discussed in the first *Ortiz* exception, but the *State* even discussed *Patton*'s actual knowledge prong at the *Ortiz* hearing. By treating a claim that the district court erred in its actual knowledge finding—a subcomponent within the framework of the first *Ortiz* exception analysis—as an "entirely new" error, the panel improperly pigeonholed the question of preservation, forming a much higher barrier to appellate review than we have traditionally imposed. Cf., *Smith*, 312 Kan. at 883-87 (defendant precluded from raising new *Ortiz* exception arguments on remand when, previously, litigation had only focused on the third *Ortiz* exception).

Thus, the panel's misapplication of the burden-shifting framework and its overly narrow preservation analysis kept it from considering the merits of Collins' arguments rooted in the first *Ortiz* exception. We will consider those merits.

11

The State, in its brief before the Court of Appeals, attempts to show Collins' actual knowledge of his right to appellate counsel by pointing to his plea form and his prior experience with appointed counsel. Neither argument is persuasive. If anything, Collins' plea form suggested a *limited* right to appeal, while his prior experience with appointed counsel in other contexts has no bearing on the knowledge of his right to appointed appellate counsel in the context of probation revocations or at the relevant time period here.

We now return to the *Patton* analysis to consider the third step. Once the State has failed to show the defendant has actual knowledge of each of the three necessary pieces of information, then the burden shifts back to the defendant to prove that, had they "been properly informed, a timely appeal would have been sought." *Patton*, 287 Kan. at 222.

Here, the district court found Collins instructed Heath to not file an appeal at the October 26 meeting. But to the extent the district court intended for this finding to stand in for a finding as to what Collins would have done had he been properly advised of his rights, the district court again erred. Without complete, actual knowledge of all components of his appellate rights, Collins could not make an informed decision on whether he would seek an appeal. The court thus applied an incorrect standard to the extent it was assessing this third step.

*Remedy*

We acknowledge that Collins sought to appeal shortly after being advised of *some* of his appellate rights. And one could reasonably infer from this fact that Collins would have appealed had he been *fully* informed. But we are not a fact-finding court, so we must remand to the district court to determine whether Collins would have appealed had he been properly advised. Further, prior to this fact-finding, we direct the district court to properly advise Collins of his appellate rights.

We also clarify that this remand does not provide the State an additional opportunity to prove Collins had actual knowledge of his right to appointed appellate counsel. The State had its chance, and it failed. Nor may Collins present new evidence. Collins had the burden of proof below as to the first and third steps of the first *Ortiz* exception analysis. He carried that burden as to the first step, while the State failed to carry its burden as to the second step. But Collins may not present new evidence as to the third step; he has already had his chance to do so. Thus, on remand, concerning the first *Ortiz* exception, the district court's factual findings must be limited only to the third step of the *Patton* analysis, being whether Collins would have appealed had he been *fully* aware of his appellate rights. To this point, the district court may only consider the evidence from the original *Ortiz* hearing, including the evidence that Collins *did* appeal. The court may not consider new evidence.

*Third* Ortiz *exception—alleging counsel's failure to perfect an appeal*

Collins also argues the third *Ortiz* exception justifies an out-of-time appeal. "The standards of review governing the third *Ortiz* exception are the same as those governing the first." *State v. Shelly*, 303 Kan. 1027, 1041, 371 P.3d 820 (2016).

*Ortiz*' third "exception allows a late appeal if a defendant was furnished or retained counsel who failed to perform." *Shelly*, 303 Kan. at 1041. To successfully invoke this exception, the defendant bears the burden of showing: "(1) Whether the defendant told his or her counsel to appeal, but the attorney failed to file or perfect the appeal; and, (2) if so, the defendant will enjoy a presumption of prejudice but must show that he or she would have timely appealed, but for counsel's failure." *State v. Smith*, 304 Kan. 916, 921, 377 P.3d 414 (2016); see also *Patton*, 287 Kan. at 219.

13

Here, the district court found Collins directed Heath *not* to file a notice of appeal during the October 26 meeting. The district court also found Collins next spoke with Heath on November 3, three days past the statutory deadline. Based on our review of the record, these factual findings are supported by substantial competent evidence. See *State v. Bennett*, 318 Kan. 933, 939, 550 P.3d 315 (2024) ("While Bennett argues that he asked counsel to file a timely appeal, counsel directly refutes that claim. The district court found his counsel's testimony to be credible. We find the court's conclusion is supported by substantial competent evidence.").

From these facts, the district court concluded the third *Ortiz* exception was inapplicable because Heath was simply following Collins' direction. We agree. In *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), the Court explained that "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." Accordingly, the district court and panel were correct that, based on Heath's perception of Collins' wishes, Heath did not perform deficiently, and the *Ortiz* exception does not provide Collins with relief.

Still, Collins presents two arguments suggesting the third *Ortiz* exception justifies an out-of-time appeal. First, Collins argues Heath performed deficiently by failing to secure a written appeal waiver, under K.A.R. 105-3-9(a)(3). But, as Collins acknowledges, we have previously rejected this argument. In *State v. Northern*, 304 Kan. 860, 865, 375 P.3d 363 (2016), Northern argued that counsel's failure to get a signed waiver form under K.A.R. 105-3-9 "would be better evidence of whether the third *Ortiz* exception applies." 304 Kan. at 865. We explained that "[e]ven though a signed waiver would have simplified the factual findings in the present case, the district court heard evidence and evaluated the credibility of the witnesses and determined that Northern did not ask his attorney for an appeal." 304 Kan. at 865. Here, the district court heard Heath's and Collins' testimony and evaluated their credibility, which led the district court to

14

conclude Collins did not ask Heath to perfect the appeal until after the statutory deadline had passed. As in *Northern*, this evidence is sufficient regardless of Heath's failure to get a signed waiver form.

Second, Collins argues Heath performed deficiently by providing inaccurate legal advice. Collins claims his statement to Heath that he did not want to file an appeal and just get his time started shows a misunderstanding that he had to choose whether to file an appeal *or* begin his sentence. See K.S.A. 21-6615 (defendant receives credit against sentence for time incarcerated, regardless of appeal). He suggests Heath performed deficiently by not clarifying these avenues were not mutually exclusive. Cf. *State v. Perry*, 303 Kan. 1053, 1061, 370 P.3d 754 (2016) ("His failure to advise Perry of the current state of the law so that she could make an informed decision about whether to take an appeal is sufficiently equivalent to a failure to file a direct appeal that Perry . . . qualifies for application of the third *Ortiz* exception.").

Unlike the waiver form argument, Collins did not raise this specific argument before the district court. His motion and argument on the third *Ortiz* exception focused on Heath's failure to follow K.A.R. 105-3-9. Because of this, the panel found this argument was unpreserved and declined to consider it. *Collins*, 2024 WL 2872044, at *6-7.

But we again conclude the panel misapplied our preservation rules. Collins raised the broad issue that his out-of-time appeal should be allowed because counsel failed to perfect the appeal in a timely manner. And "*Patton* makes clear that counsel's effectiveness is part and parcel of the third *Ortiz* exception," meaning Collins properly placed the issue of his counsel's effectiveness before the district court. *Shelly*, 303 Kan. at 1047.

That said, Collins developed no evidence at the *Ortiz* hearing demonstrating the purported misunderstanding or erroneous legal advice. Unlike the first *Ortiz* exception,

15

which places the burden on the State to show the defendant had actual knowledge of all relevant information, the defendant bears the burden of showing deficient performance when raising a claim under the third *Ortiz* exception. *Smith*, 312 Kan. 876, Syl. ¶ 4.

But rather than proving this claim at the *Ortiz* hearing, Collins asks us to *assume* he had a misunderstanding and that Heath failed to provide the necessary legal advice, simply based on Heath's testimony that Collins said "something to the effect of no, I just wanna get my time started." This testimony fails to support Collins' preferred inferences. And he does not direct us to any other evidence for these conclusions. Accordingly, Collins' argument for deficient performance lacks evidentiary support.

CONCLUSION

We reverse the Court of Appeals panel and the district court as to the first *Ortiz* exception. We remand to the district court for hearing only on the third step in the first *Ortiz* exception's analysis. At such hearing, the district court must first fully inform Collins of his appellate rights. As we have clarified, neither party may present new evidence at this hearing. Then, at the conclusion of the hearing, the district court must make factual findings on whether Collins would have appealed had he been properly advised of his appellate rights.

We affirm the Court of Appeals panel and district court as to the third *Ortiz* exception, albeit on different grounds.

Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and reversed in part, and the case is remanded with directions.

16